The **WILLIAM POWELL CO.**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. C-1-78-610.

United States District Court,
S. D. Ohio, W. D.

May 4, 1981.

---

Stephen M. Nechemias, Cincinnati, Ohio, for plaintiff.

Patrick J. Hanley, Asst. U. S. Atty., Cincinnati, Ohio, Dennis M. Donohue, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

HOGAN, Senior District Judge.

The plaintiff The William Powell Company (hereinafter Powell or taxpayer) filed this case under 26 U.S.C. § 7422, seeking a tax refund of $404,403.38 for the years 1967, 1970, 1971 and 1973. This action arises from the Commissioner's rejection of Powell's attempt to use the last-in-first-out method of inventory accounting (hereinafter LIFO) for taxable year 1973. This case is before the Court on a stipulated record, with both sides having briefed the pertinent issues and argued them orally before this Court. The case is now ripe for decision.

This case presents two issues:

1) What is the proper scope of review to be applied to the Commissioner's decision to disallow a taxpayer's election of LIFO for failure to comply with the conformity requirements of 26 U.S.C. § 472(c)?

2) Does the issuance of annual reports and financial statements, using the first-in-first-out method of inventory accounting (hereinafter FIFO), violate the conformity requirement of subsection (c) of § 472, when, prior to the LIFO election, such FIFO reports are recalled and reissued in LIFO?

We rule that judicial review is permissive of an independent construction of the statute involved and conclude that the Commissioner incorrectly interpreted and applied § 472(c). The taxpayer is in compliance with the conformity requirement and, therefore, judgment is for Powell. This decision renders consideration of a number of other matters, including questions of constitutionality, unnecessary.

## I.

Powell is a closely-held Ohio corporation, using the calendar year for tax purposes. Prior to the 1973 taxable year, the taxpayer used FIFO for financial reporting and federal income tax purposes. In early 1974, the taxpayer, pursuant to a loan application, forwarded various financial materials to the First National Bank of Cincinnati (hereinafter First National), including certain accountants' worksheets that were to be used in preparing the taxpayer's financial statements for the year ending December 31, 1973. These worksheets set forth the plaintiff's inventory in FIFO.[1]

Powell retained the certified public accounting firm of Peat, Marwick, Mitchell and Company (hereinafter Peat) to perform a limited audit of the taxpayer's financial position for the year ending December 31, 1973. In March, 1974, fifteen copies of an audited financial statement were sent to John L. Schaefer, Controller-Secretary of Powell, by Peat. This was accompanied by an accountant's report. Two additional copies of this financial statement were sent, one to Mr. David M. Forker, Powell's Chairman of the Board, and one to Mr. V. Anderson Coombe, the President of Powell. The balance sheet and statement of earnings and retained earnings included in this financial statement were set forth in FIFO. In April, 1974, seven of these statements were distributed to the members of the plaintiff's board of directors. Two more were forwarded to the Thomas E. Wood Insurance Agency, and one was sent to First National. In September, 1974, Powell contacted each of the above persons or companies and requested that this statement be returned. Powell also forwarded to these persons and companies a revised financial statement in LIFO. All but four of the original FIFO statements were returned.

Annual reports were issued at various times in 1974 by Powell.[2] These reports contained a balance sheet and a statement of earnings and retained earnings in FIFO. On April 23, 1974, at the annual shareholders meeting, Powell's officers reviewed the taxpayer's financial position for 1973 based on the annual report. On September 3, 1974, the taxpayer's board of directors opted to use LIFO for the 1973 taxable year. Use of LIFO reduced Powell's 1973 inventory from $16,612,093 to $15,627,205. This in turn reduced the taxpayer's 1973 income. On September 6, 1974, the board of directors informed the shareholders of this decision. The letter made it clear to the shareholders that there was absolutely no change in the real value of Powell's inventory. Later in September, Powell issued revised reports which included a balance sheet and a statement of earnings and retained earnings in LIFO. At this time, the taxpayer asked its shareholders to return the original 1973 annual report. Ultimately, seventeen of the original thirty-nine reports distributed were returned.

On September 16, 1974, the taxpayer filed its 1973 tax return.[3] Powell used LIFO in the tax return. As a result of using LIFO, the taxpayer incurred a net operating loss (hereinafter NOL) of $476,168.72. The Internal Revenue Service (hereinafter IRS) disallowed Powell's use of LIFO for failure to meet the conformity requirement of 26

---

1. The loan was made by the Bank prior to the receipt of these worksheets.

2. 

| | |
|---|---|
| Stockholders | – March 29, 1974 |
| Directors | – April 23, 1974 |
| First National | – April 30, 1974 |
| Thomas E. Wood Insurance Agency | – June 12, 1974 |
| William W. Gilbert, Attorney | – August 12, 1974 |

3. This late filing was timely due to two three-month extensions granted to Powell. With its 1973 federal income tax return, plaintiff filed a Form 970, Application to Use LIFO Inventory Method. This filing was also timely.

U.S.C. § 472(c). This decision increased the taxpayer's income for 1973 by $984,888 and, thus, destroyed the NOL. As a result, the IRS determined a 1973 tax liability of $171,-938.38, plus $13,405.64 in interest. Powell paid these amounts. The elimination of the NOL in 1973 resulted in deficiencies being assessed for previous years as follows:

1967—$6,316 plus $625.24 interest

1970—$10,669 plus $1,056.16 interest

1971—$215,480 plus $21,331.04 interest

Powell also paid these amounts.

Powell then filed timely refund claims, which were rejected, and therefore Powell timely filed this refund action. The facts were stipulated and both sides submitted briefs supporting their position. Supplemental briefs were submitted concerning additional authority. Oral arguments were held on April 23, 1981, and the case submitted for consideration by this Court.

## II.

The initial question facing this Court is to what extent should we review the Commissioner's interpretation of § 472(c). The deference due such a construction is a somewhat troubled and uncertain area of the law. See Davis, K., Administrative Law of the Seventies, § 30.00 (1976). This confusion was addressed by Judge Friendly in *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35 (2d Cir. 1976) *aff'd sub. nom. Northeast Maine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

> We think it is time to recognize, in line with Professor Kenneth Culp Davis' brilliant discussion, 4 Administrative Law Treatise—§§ 30.01–09 and the corresponding sections in the 1970 Supplement that there are two lines of Supreme Court decisions on this subject which are analytically in conflict, with the result that a court of appeals must choose the one it deems more appropriate for the case at hand. (Footnote omitted.) Id. at 49.

4. The conformity requirement is embodied in 26 U.S.C. § 472(c) and (e), but only subsection

In 1974, the United States Supreme Court decided *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). The *Ruiz* decision seems to undermine the deference approach by stating that in order to be granted deference, the agency construction of a statute must be consistent with Congressional purpose. *Id.* at 237, 94 S.Ct. at 1075.

■ We believe in a case such as this, where the IRS asserts that there is no room for interpretation, where there is no long-standing administrative interpretation and where there is little case law or legislative history to guide the Commissioner, we have an affirmative duty to determine the rightness of the interpretation, not just its reasonableness. We shall, therefore, undertake a full, searching inquiry into the meaning and purpose of § 472(c).

Until 1938, LIFO was not acceptable for tax accounting purposes. Barker, Practical Aspects of Inventory Problems Under Current Conditions: Lifo, Involuntary Liquidations, 10 N.Y.U. Inst. on Fed. Tax. 511 (1952). In that year Congress allowed tanners and producers of non-ferrous metals to use LIFO, expanding this privilege to all taxpayers the following year. *Id.* The 1939 amendments added a conformity requirement, which was amended in 1942 to its current form.[4]

The principle purpose of LIFO is to mitigate inflation, see Gertzman, LIFO: Current Problems and Needed Changes, 34 N.Y.U. Inst. on Fed. Tax. 235 (1976), and to protect the taxpayer from paying taxes on profits resulting from price inflated inventories, see Barker, 10 N.Y.U. Inst. on Fed. Tax. 511 (1952).

> Under the FIFO method the earliest historical costs are matched against current revenues and, to the extent that current costs exceed such historical costs, gross profit is overstated and distorted. Rather than being available totally for the payment of operating expenses, the re-

(c) is relevant to our consideration.

payment of debt, new investment, distribution to owners and the like, a portion of such "profit" must be used merely to replace the inventory which was sold. It is this distortion of profit which may be substantially mitigated by the use of LIFO.

The objective of the LIFO method is to match relatively current costs against current revenues in order to produce a more realistic gross profit.

Gertzman, 34 N.Y.U. Inst. on Fed. Tax. 234, 240 (1976).

Section 472(c), the conformity requirement allegedly violated by Powell, provides:

Subsection (a) shall apply only if the taxpayer establishes to the satisfaction of the Secretary that the taxpayer has used no procedure other than that specified in paragraphs (1) and (3) of subsection (b) in inventorying such goods to ascertain the income, profit, or loss of the first taxable year for which the method described in subsection (b) is to be used, for the purpose of a report or statement covering such taxable year—

(1) to shareholders, partners or other proprietors, or to beneficiaries, or

(2) for credit purposes.

Powell argues that it has not "used" FIFO within the meaning of 472(c). Its position with respect to 472(c)(2) is that the "worksheets" were not used for "credit purposes," since the credit had been extended prior to the delivery of the worksheets. We accept that. With respect to 472(c)(1), it is the taxpayer's contention that use is determined at the time of the LIFO election. This election need not be made until the taxpayer files its return. 26 C.F.R. § 1.472–3. At the time Powell elected LIFO, it was no longer "using" the FIFO statements, inasmuch as they had been recalled prior to the election and LIFO statements reissued.

The government urges us to reject this interpretation and to hold that Powell's actions clearly violated § 472(c)(1). It is the government's position that the conformity requirement is to be read in its plain meaning and applied strictly. The government contends further that the taxpayer's interpretation emasculates § 472(c)(1) and reduces compliance with it to an artifice.

■■■ This Court, while agreeing that Powell's activities violate the plain language of § 472(c)(1), is hesitant to strictly apply the plain meaning rule in this case. It is the general rule that the words of a revenue statute are interpreted "in their ordinary, everyday senses." *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S.Ct. 1047, 1051, 91 L.Ed. 1301 (1947); *see Hanover Bank v. Commissioner*, 369 U.S. 672, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962). A rigid application of this rule would not, however, be consistent with the Commissioner's ongoing interpretation of the conformity requirement. There are at least four exceptions to the conformity requirement. *See* Note, An Examination of Some Considerations Relating to the Adoption and Use of the Last-in, First-out (LIFO) Inventory Accounting Method, 28 Vand.L.Rev. 521, 534–40 (1975). These exceptions are engrafted in several IRS publications. *See* 26 C.F.R. § 1.472–2(e); Rev.Proc. 75–10, 1975–1 C.B. 651; Rev.Proc. 72–29, 1972–1 C.B. 757; Rev.Rul. 74586, 1974–2 C.B. 156. The Commissioner has admitted that a literal reading of the conformity requirement clashes with both accounting requirements and securities regulations. *Cf.* Rev.Proc. 75–10, 1975–1 C.B. 651. Therefore, a rigid application of the plain language of § 472(c)(1) is neither plausible nor practical.

This leads us to the purpose of the conformity requirement. Why did Congress, when it made the LIFO method available to all taxpayers, include a subsection requiring conformity of method? The IRS asserts that such a requirement assures that the taxpayer is motivated by business considerations, not only tax consequences. Powell argues that the requirement was included to exact a price from the taxpayer electing LIFO.

■■■ · In essence, the government is asking this Court to add a business purpose requirement to § 472(c)(1). Strict compliance with § 472(c)(1) does not require that the

electing taxpayer be motivated by a business purpose. We refuse to read such a requirement into the statute.[5]

We feel equally compelled to reject the taxpayer's alternate purpose. The taxpayer has adopted the deterrence theory expressed in Barker, 10 N.Y.U. Inst. on Fed. Tax. 511 (1952). This theory is attractive, as evidenced by its impressive following, *cf.* Gertzman, 34 N.Y.U. Inst. on Fed. Tax. 235 (1976); Schneider, 1 Fed. Income Tax. of Inventories, § 11.03[1]; Antes, Thomas J. Galliher, LIFO: Technical Requirements, Methods, Changes and Transfers, 74–3d B.N.A. Tax Manual A–2; Note, 28 Vand.L. Rev. 521 (1975), but there is no support for this approach in the legislative history. We cannot presuppose this purpose on the basis of what we think Congress was contemplating, for such action is speculation, not evidence of legislative intent. *See Commissioner v. Gracey,* 159 F.2d 324 (5th Cir. 1947).

Legislative and judicial history of the conformity requirement are of limited value. In *Insilco Corp. v. Commissioner,* 73 T.C. 589 (1979), Judge Tannenwald stated that the underlying intent behind the conformity requirement was to insure that the use of LIFO for tax purposes conformed as nearly as possible with the best accounting practice in the trade or business in order to provide a clear reflection of income, citing Sen.Rep. 648, 76th Cong. 1st Sess. 6–7 (1939), 1939–2 C.B. 524, 528 and H.R.Rep. 2330, 75th Cong. 3d Sess. 34 (1938), 1939–1 C.B. 817, 819. This intent supports an interpretation that § 472(c)(1) was designed to require consistency in accounting method in order to insure that the method used by the taxpayer most clearly reflected income.

■ This consistency requires the taxpayer, at the time he elects LIFO, to be using LIFO for the business reports mentioned in § 472(c)(1). This consistency is connected neither to guaranteeing the existence of a business purpose nor to deterring the use of LIFO. The conformity requirement, in essence, is designed to establish prima facie evidence that at the time of its election, the taxpayer feels LIFO provides a clear reflection of its income.

In the instant case, Powell has demonstrated that it felt LIFO provided a clear reflection of income at the time it was elected. This does not result in an emasculation of the statute, particularly in light of its past interpretation, supra. This interpretation requires that the taxpayer be using consistent methods at the time he elects to use LIFO, but is contingent on the recall and reissue present in this case. Absent this action, Powell would not be in compliance with § 472(c)(1). By taking this action, however, Powell met the level of the consistency demanded by the conformity requirement.

For these reasons, the taxpayer's request for a refund is found to be meritorious. Judgment will be entered in the plaintiff's favor with the amount to be determined in the manner provided by paragraph 21 of the stipulation of facts (Doc. 8).[6]

---

**5.** While courts have frequently plugged business purpose requirements into many revenue statutes, *see* Rice, Judicial Techniques in Combating Tax Avoidance, 51 Mich.L.Rev. 1021, 1041 n. 66 (1953), we refuse to do so in this case. The business purpose requirement must be used with judicial restraint to avoid inconsistent and unpredictable results. *Id.* Here there is no indication of Congressional intent to apply such a requirement. It is imperative that we not presumptively equate tax accounting and business accounting. *Cf. Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 541–44, 99 S.Ct. 773, 785–87, 58 L.Ed.2d 785 (1979).

**6.** The parties are requested to submit a proposed judgment in accordance with this memorandum.